# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:21-CV-00026-KDB-DSC

| | |
|---|---|
| DFA DAIRY BRANDS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>PRIMUS BUILDERS, INC.<br>P3 ADVANTAGE, INC.,<br><br>Defendants.<br>And<br><br>PRIMUS BUILDERS, INC. AND P3 ADVANTAGE, INC.<br><br>Third-Party Plaintiffs,<br><br>v.<br><br>REPUBLIC REFRIGERATION, INC.<br><br>Third-Party Defendant. | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on Third-Party Defendant's Partial Motion for Judgment on the Pleadings (Doc. 18) and the parties' briefs.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and this Motion is now ripe for the Court's consideration.

## I. PROCEDURAL AND FACTUAL BACKGROUND

This matter arises out of a negligence claim by DFA Dairy Brands, LLC (Plaintiff) against Primus Builders and P3 Advantage (Defendants and Third-Party Plaintiffs). Doc. 20, at pg. 2. The

1

initial claim stems from an incident that occurred during the renovation of an anhydrous ammonia refrigeration system ("project") at Plaintiff's storage facility in Statesville, North Carolina. Doc. 10, at ¶¶ 18-20, 21-23. Plaintiff contracted with Defendants to perform the renovation. Id.

Defendants, as the prime contractors, entered a Design/Build Subcontract with Republic Refrigeration ( Republic and Third Party Defendant) related to the project. Id. at p. 7, ¶ 9. The Subcontract required Republic to provide all labor, materials, services, oversight, and all other things necessary to complete the refrigeration systems Project. Id. at p. 7, ¶ 10. The work included the construction of six blast evaporators, relocation of four blast evaporators, and piping for the decommission of the four units. Id.

The Subcontract included several liability provisions. The most pertinent of these provisions is Section 9 of the Subcontract "Indemnification." This provision states "Subcontractor shall, to the fullest extent permitted by law and to the extent that any such claims, losses, liabilities and/or expenses are caused … by any act or omission… of Subcontractor…, regardless of whether any such claims, losses, liabilities or expenses are caused in part by a party indemnified hereunder, indemnify…any and all claims… arising out of or in any manner caused by… the performance of this Subcontract." Ex. A, Doc. 19-1, at p. 6-7.

Accepting the factual allegations of the Complaint as true, the incident occurred during the scheduled decommission of the four blast evaporators on January 10, 2020. Doc. 10. ¶17. Third-Party Plaintiffs were working near an evaporator coil and removing wall panels. Id. The evaporator coil should have been decommissioned and all anhydrous ammonia removed. Id. at ¶ 16. After safe removal of the wall by the Third-Party Plaintiffs, Republic requested that they remove ice from the evaporator and its coils as part of the demolition process of the refrigeration system. Id. at ¶ 17. In the process of the ice removal, a coil was pierced releasing anhydrous ammonia. Id.

The ammonia contaminated Plaintiff's product and rendered it unfit for consumption, thus resulting in damages. Id. at ¶ 8.

On February 19, 2021, Plaintiff filed a Complaint against Defendants alleging negligence in the decommission of the four evaporator freezers. Doc. 1, ¶¶18-32.

Defendant answered the Complaint denying all negligence and asserting a third-party Complaint against Republic. Doc. 10. In this third-party Complaint, Defendants allege any liability on their part is a direct result of Republic's negligence in failing to properly supervise the decommission of the Refrigeration System. Id. at ¶ 19. Accordingly, Republic is obligated to indemnify Defendants pursuant to the terms of the Subcontract. Id. at ¶ 20.

On May 28, 2021, Republic filed its Partial Motion for Judgment on the Pleadings seeking the dismissal of the express indemnity claim and alleging the provision is unenforceable under North Carolina law. Doc. 18.

## II. DISCUSSION

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). In resolving a motion for judgment on the pleadings, the court must accept all of the non-movant's factual averments as true and draw all reasonable inferences in its favor. Bradley v. Ramsey, 329 F. Supp.2d 617, 622 (W.D.N.C. 2004). Judgment on the pleadings is warranted where the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Id. The court may consider the complaint, answer, and any materials attached to those pleadings or motions for judgment on the pleadings "so long as they are integral to the complaint and authentic." Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009); see also Fed.R.Civ.P. 10(c) (stating that "an exhibit to a pleading is part of the pleading for

all purposes."). Unlike a Rule 12(b)(6) motion, the court may consider the answer as well on a Rule 12(c) motion. Alexander v. City of Greensboro, 801 F.Supp.2d 429, 433 (M.D.N.C. 2011).

Although a motion for judgment on the pleadings pursuant to Rule 12(c) is separate and distinct from a motion to dismiss under Rule 12(b)(6), federal courts apply the same standard for Rule 12(c) motions as for motions made pursuant to Rule 12(b)(6). Independence News, Inc. v. City of Charlotte, 568 F.3d 148, 154 (4th Cir. 2009); Burbach Broadcasting Co. of Delaware v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002); Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999).

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

4

(citing Twombly, 550 U.S. at 555) (alleging that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief 'will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Sons of Confederate Veterans v. City of Lexington, 722 F.3d 224, 228 (4th Cir. 2013) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." Neitzke v. Williams, 490 U.S. at 328; see also Stratton v. Mecklenburg Cnty. Dept. of Soc. Servs., 521 Fed. Appx. 278, 293 (4th Cir. 2013)). The court must not "accept as true a legal conclusion couched as a factual allegation." Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014).

### A. Under Chapter 22B of the North Carolina General Statutes, application of Georgia Law is improper.

In a diversity action, the Court "must apply the law of the forum in which it sits, including the forum's choice-of-law rules." Calvert Fire Ins. Co. v. Yosemite Ins. Co., 573 F. Supp. 27, 29 (E.D.N.C. 1983). Generally, North Carolina's "conflict of laws rule is that matters affecting the substantial rights of the parties are determined by lex loci, the law of the situs of the claim, and remedial or procedural rights are determined by lex fori, the law of the forum." Boudreau v. Baughman, 322 N.C. 331, 335, 368 S.E.2d 849, 853–54 (1988).

The North Carolina Supreme Court has held "the interpretation of a contract is governed by the law of the place where the contract was made." Cable Tel Servs., Inc. v. Overland Contracting, Inc., 154 N.C. App. 639, 642, 574 S.E.2d 31, 33 (2002) (quoting Land Co. v. Byrd, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980)). But "[the] court interprets a contract according to the intent of the parties to the contract." Id. Thus, "where parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect," as the parties have shown their intent to make an exception to this presumptive rule. Id.

There are exceptions to the general choice of law rules. See id. A choice of law provision is generally binding only "as long as [the parties to the contract] (1) had a reasonable basis for their choice and (2) the law of the chosen State does not violate a fundamental public policy of the state or otherwise applicable law." Id. (internal citations omitted).

Regarding the second exception, N.C. Gen. Stat. §22B-2 dictates the applicable choice of law for the improvement of real property in this state. This statute provides "A provision in any contract, subcontract, or purchase order for the improvement of real property in this State…is void and against public policy if it makes the contract, subcontract, or purchase order subject to the laws

6

of another state….” N.C. Gen. Stat. § 22B-2; see also Price & Price Mech. of N.C., Inc. v. Miken Corp., 191 N.C. App. 177, 180, 661 S.E.2d 775, 777-78 (2008) ("[T]he contract provisions that Florida law applies, and that contract litigation is to occur only in Hillsborough County, Florida, are void").

Here, Third-Party Plaintiffs contend the Subcontract, which was willingly entered into by and between Third-Party Plaintiffs and Republic, provides that any provisions within the Subcontract relating to any obligations of the Republic "to indemnify, hold harmless and/or defend the Indemnitees . . . shall be governed by the laws of the State of Georgia." Doc. 20, at p. 9. They allege the decision to include this language indicates the parties intended and agreed that Georgia law would govern the interpretation of the indemnification provision. Id. at p. 10. It is clear from the language of the subcontract and the citizenship of Third-Party Plaintiffs, both Georgia corporations, that the parties had a reasonable basis for including a Georgia choice of law provision.

Third-Party Plaintiffs acknowledge the second exception to the general rule and the relevant statute forbidding the use of another state's laws to interpret a contract for the improvement of real property in North Carolina. Yet they contend the choice of law provision does not run afoul N.C. Gen. Stat. 22B-2 because Georgia law is not being applied to the subcontract generally. Rather, Georgia law only applies to the indemnity provision. Doc. No. 20, at p. 13.

Third-Party Plaintiffs' choice of law argument fails. Their reliance on the artificial distinction between the subcontract generally and the indemnification provision is misplaced. Doc. No. 22, at p. 3. N.C. Gen. Stat. § 22B-2 does not afford latitude to sever the applicable law in construction contracts as Third-Party Plaintiffs attempt to do. Id. The Third-Party Plaintiffs point to no authority that would allow them to circumnavigate the language of section 22B-2. Id.

7

Despite Third-Party Plaintiffs being Georgia corporations and Georgia having a "substantial relationship to the parties or the transaction" (Doc. No. 20, at p.10), the residency of parties to a construction contract to improve North Carolina real property cannot defeat the legislative determination to declare such choice of law provisions void. Doc. No. 22, at p. 3. The mandate of N.C. Gen. Stat. § 22B-2 is clear. Out-of-state contractors cannot venture into North Carolina to perform construction work on North Carolina real property and seek the application of another jurisdiction's law. Id.; see also N.C. Gen. Stat. § 22B-2.

### B. Under North Carolina law, the relevant indemnity provision in the subcontract between Third Party Plaintiffs and Republic is not against public policy.

In North Carolina, indemnity provisions in the construction industry are governed by statute. See Bridgestone/Firestone, Inc. v. Ogden Plant Maint. Co. of N. Carolina, 144 N.C. App. 503, 506, 548 S.E.2d 807, 810 (2001), aff'd, 355 N.C. 274, 559 S.E.2d 786 (2002). Pursuant to N.C. Gen. Stat. §22B-1(a) "a construction indemnity agreement may purport to indemnify a promisee from damages arising from negligence of the promisor, but any provision seeking to indemnify the promisee from its own negligence is void." Bridgestone, 144 N.C. App. at 506, 548 S.E.2d at 810. N.C. Gen. Stat. § 22B-1(b) provides additional guidance, stating that "Provisions in, or in connection with, a construction agreement or design professional agreement purporting to require a promisor to indemnify or hold harmless the promisee…against losses, damages, or expenses are against public policy, void, and unenforceable." Thus, under North Carolina law, "a general contractor cannot require a subcontractor to insure it against its own negligent acts." St. Paul Fire & Marin Ins. Co. v. Hanover Ins. Co., 187 F. Supp. 2d 584, 590 n.7 (E.D.N.C. 2000).

8

Here, the parties agree that pursuant to North Carolina law, an indemnity provision that holds the promisor responsible for the promisee's negligence is unenforceable. The parties disagree whether the relevant indemnification provision in the Subcontract would require Republic to pay for damages caused by Third-Party Plaintiffs' negligence. Doc. 19, at p. 7.

Republic claims the language found in the indemnification provision, specifically "regardless of whether [the claims] are caused in part by a party indemnified hereunder," is overly broad, and the mere presence of this language indicates the provision "necessarily includes" indemnity for injury caused by Third-Party Plaintiffs' own negligence. Doc. No. 20, at p. 16. Republic posits the inclusion of this language automatically renders the provision void pursuant to §22B-1. ECF No. 19, at p. 6. They also contend the claim should be dismissed because indemnity "does not cover losses for which the indemnitee is not liable to a third person." One Beacon Ins. Co. v. United Mech. Corp., 207 N.C. App. 483, 489, 700 S.E.2d 121, 125 (2010). This interpretation fails for two reasons.

Under the established law of indemnities, "[a] right to indemnity exists whenever one party is exposed to liability by the action of another who, in law or equity, should make good the loss of the other . . . ." and a right to indemnity "can be by express contract . . . ." See Terry's Floor Fashions, Inc. v. Georgia-Pac. Corp., No. 5:97-CV-683-BR(2), 1998 WL 1107771, at *6 (E.D.N.C. July 23, 1998) (citing McDonald v. Scarboro, 91 N.C. App. 13, 22, 370 S.E.2d 680, 686, review denied, 323 N.C. 476, 373 S .E.2d 864 (1988)). A party must show that they are liable for another's acts or omissions in order to recover on an indemnity claim. See One Beacon Ins. Co. v. United Mech. Corp., 207 N.C. App. 483, 489, 700 S.E.2d 121, 125 (2010); see also, Cox v. Shaw, 263 N.C. 361, 139 S.E.2d 676 (1965); 41 Am. Jur. 2d § 2, Bases for Indemnity, at 348); see also Weaver Cooke Constr., LLC v. Stock Bldg. 23 Supply, LLC, No. 5:14-CV-537-BR, 2016 WL

9

4397970, at *4 (E.D.N.C. Aug. 12, 2016) ("the statute does not preclude indemnification where one is being held responsible solely for one's own negligence even though other parties might have been negligent too.").

Republic argues indemnification is inapplicable because there are only two outcomes for the Third-Party Plaintiffs' claim, neither of which involve indemnity. First, a jury may reject Plaintiff's claim. Doc. No. 22, at p. 8. In that case, Third-Party Plaintiffs have no liability, and the indemnification obligations of the subcontract do not apply. Id. Alternatively, a jury may find for Plaintiff. Yet, Plaintiff's only claim against Third-Party Plaintiffs is for their own negligence. Thus, Third-Party Plaintiffs would be seeking indemnification from Republic for their own negligence in violation of N.C. Gen. Stat. § 22B-1(a). See Miller Brewing Co. v. Morgan Mechanical Contractors, Inc., 90 N.C. App. 310, 368 S.E.2d 438, disc. review denied, 323 N.C. 174, 373 S.E.2d 110 (1988). Republic fails to recognize the possibility of their own negligence in connection with this incident.

In the initial Complaint, Plaintiff alleged Third-Party Plaintiffs are liable for the damages it sustained because they were responsible for the overall safety of the worksite as well as the supervision of all subcontractors at the facility Doc. No. 20, at p. 23. Under the Subcontract, Republic was responsible for the oversight of the decommission of the old refrigeration system. This responsibility encompassed the safe purging of anhydrous ammonia from the evaporator coils. Id. If the factual allegations outlined in the Third-Party Complaint are taken as true, Republic's failure to adequately decommission the evaporator coils caused the ammonia release to occur resulting in Plaintiff's damages. Id. at p. 23.

Under the established law of indemnities, it is plausible that as the general contractor, Third-Party Plaintiffs could be liable due to their overall responsibility for workplace safety. They

10

could then hold Republic accountable for negligent performance of the Subcontract. Id. The Third-Party Complaint does not seek to hold Republic liable for any damages caused by Third-Party Plaintiffs. Rather, this provision would indemnify Third-Party Plaintiffs from damages arising out of Republic's negligent oversight.

Under North Carolina law, the Court must analyze the overall effect of the indemnity provision, when read as a whole, to determine whether the language unlawfully requires one party to be responsible for the negligence of another. Bridgestone/Firestone, Inc. v. Ogden Plant Maint. Co. of N. Carolina, 144 N.C. App. 503, 506, 548 S.E.2d 807, 810 (2001), aff'd, 355 N.C. 274, 559 S.E.2d 786 (2002). Moreover, indemnity provisions that hold a promisor liable "regardless of whether such claims are alleged to be caused by negligence on the part of [promissee]" are not necessarily void. Instead, if the overall effect of the provision indicates that "[promisee] [is] seek[ing] indemnity for costs and sums paid as a result of [promisor's] negligence[,]" then the provision remains enforceable. Bridgestone, 144 N.C. App at 507, 548 S.E.2d at 810; see also Weaver Cooke Constr., LLC v. Stock Bldg. Supply, LLC, No. 5:14-CV-537-BR, 2016 WL 4397970, at *4 (E.D.N.C. Aug. 12, 2016) ("the statute does not preclude indemnification where one is being held responsible solely for one's own negligence even though other parties might have been negligent too.").

In Vecellio, a subcontract required the subcontractor to indemnify the prime contractor against all claims, "regardless of whether or not such claim[s] [were] caused by [the prime contractor]." Vecellio & Grogan, Inc. v. Piedmont Drilling & Blasting, Inc., 183 N.C. App. 66, 73, 644 S.E.2d 16, 21 (2007). But "the indemnity clause [was] self-limiting[,]" and the scope of the promisor's indemnification requirement was restricted to "damages (1) that arose…from performance of [subcontractor's] work; and (2) that [were] 'permitted by law.'" Vecellio, 183

N.C. App. at 72–73, 644 S.E.2d at 20. Even though the language in Vecellio seemed to indemnify the general contractor from its own negligence, the court found the clause was only capable of indemnifying damages "that [arose] …as a result of [subcontractor's] own work." Id. Accordingly, due to the limited nature of the provision, the prime contractor could not hold the subcontractor liable for its own negligence, and the provision did not violate N.C. Gen. Stat. § 22B-1(a).

The indemnification clause at issue here contains almost identical language to the one in Vecellio. Both subcontracts include the language: "regardless of whether…such claim…is caused in part by a party indemnified hereunder." But both provisions also contain language that limits the indemnification to the fullest "extent permitted by law" and limits recovery to damages "caused in whole or part by any act or omission…of Subcontractor's [work]." ECF No. 19-1, at p. 7. The addition of these limiting provisions in Vecellio narrowed the scope of recovery to damages for which only the subcontractor was liable. Thus, the provision did not contravene North Carolina public policy. The indemnity provision here restricts Third-Party Plaintiffs' recovery to losses caused by Republic's negligence and does not violate N.C. Gen. Stat. § 22B-1(a).

### III.   RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Third-Party Defendant's Partial Motion for Judgment on the Pleadings be **DENIED**.

### IV.   NOTICE OF APPEAL RIGHTS

The parties are hereby advised that pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners

Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for parties and to the Honorable Kenneth D. Bell.

**SO RECOMMENDED.**

Signed: July 27, 2021

David S. Cayer
United States Magistrate Judge