IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:21-CV-00026-KDB-DSC

DFA DAIRY BRANDS, LLC,

    Plaintiff,

    v.

PRIMUS BUILDERS, INC. AND
P3 ADVANTAGE, INC.,

    Defendants,

and

PRIMUS BUILDERS, INC. AND P3
ADVANTAGE, INC.,

    Third Party Plaintiffs,
  v.

REPUBLIC REFRIGERATION, INC.,

    Third-Party Defendant.

and

REPUBLIC REFRIGERATION, INC.,

    Fourth-Party Plaintiff,
  v.

LLH MRS MASTER RE, LLC;
LINEAGE LOGISTICS, LLC; THE
INNOVATIVE CONTRACTING
GROUP, LLC AND AGG
CONSTRUCTION, LLC

    Fourth-Party Defendants.

**ORDER**

**THIS MATTER** is before the Court on Fourth-Party Defendants LLH MRS Master RE, LLC ("LLH") and Lineage Logistics, LLC's ("Lineage LLC") (collectively, "Lineage" or "Owner") motion to dismiss Third Party Defendant/Fourth Party Plaintiff Republic Refrigeration, Inc.'s ("Republic") Fourth Party Complaint (Doc. No. 39). The Court has carefully considered this motion and the parties' related briefs and exhibits. With due regard for the applicable standard of review of motions to dismiss pursuant to Rule 12, the Court finds that Republic has, at this initial stage of the case, adequately pled its claims against Lineage. Accordingly, as further explained below, the Court will **DENY** the motion.

I. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp.*, 550 U.S. at 570; *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Maryland*, 566 U.S. 30 (2012). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Construing the facts in this manner,

a complaint must only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (internal quotations omitted). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

## II.     FACTS AND PROCEDURAL HISTORY

Lineage owns a cold storage facility in Statesville, North Carolina, (the "Statesville facility"), which uses a pressurized anhydrous ammonia refrigeration system to maintain the cold environment. (Doc. No. 29, ¶¶ 20, 22, 26, 29). Lineage LLC had a contract with Plaintiff DFA Dairy Brands, LLC ("Plaintiff" or "DFA") to store DFA's product, including ice cream, at the Statesville facility. (Doc. No. 29, ¶ 27).

This matter arises out of a major renovation of the Statesville facility undertaken by the Owner, which included work to the ammonia refrigeration system (the "Renovation."). (Doc. No. 29, ¶ 30). For the Renovation, Lineage LLC engaged Defendant Primus Builders, Inc. ("Primus"), to serve as the general contractor pursuant to a written contract (the "Prime Contract"). (Doc. No. 29, ¶¶ 30-33). Among other tasks, the Renovation involved the demolition of old blast cells that were being removed from the Statesville facility. (Doc. No. 29, ¶¶ 35-40).

On January 10, 2020, during the course of this demolition work, someone noticed ice on the evaporator coils of a blast cell that was being removed. (Doc. No. 29, ¶¶ 41-46). Employee(s) of Defendant P3 Advantage began breaking or chipping the ice away from the evaporator coils of the old blast cell using a handheld tool. (Doc. No. 29, ¶¶ 48-49). In the course of doing so, the employee(s) punctured the evaporator coil, which caused the release of anhydrous ammonia from the coils. (Doc. No. 29, ¶ 50). The release of the anhydrous

3

ammonia allegedly damaged DFA's products at the Statesville facility, leading to this action by DFA.

The Prime Contract contains extensive insurance provisions and requires that Primus name Owner as an "additional insured" on Primus' insurance policies, meaning that in the event of an insured loss on the Project, the policies procured by Primus were to also cover Owner to the same extent they covered Primus. Also, under these Prime Contract insurance provisions, Primus agreed to limits its' remedies for damages against Lineage as follows:

> Builder [Primus] hereby waives all its rights of recovery, under subrogation or otherwise, against Owner . . . to the extent covered by insurance required to be provided by Builder and its Subcontractors of whatever tier . . . and further waives all rights of recovery which are not covered by insurance . . . .

Doc. No. 39-2, sub-Exhibit E, ¶ F. Primus was further obligated to require Subcontractors to provide "similar" waivers to the Owner:

> Builder will require all tiers of its Subcontractors, vendors and suppliers, by appropriate written agreements, to provide similar waivers each in favor of all parties enumerated in this paragraph. . . . All waivers of subrogation provided in this
> Paragraph F of this Addendum shall be effective as to any individual or entity even if such individual or entity (a) would otherwise have a duty of indemnification, contractual or otherwise, (b) did not pay the insurance premium directly or indirectly, and (c) whether or not such individual or entity has an insurable interest in any property damaged.

*Id*.

Primus, in turn, hired Republic to be a subcontractor for the project. On January 21, 2019, Primus and Republic entered into an agreement (the "Subcontract") whereby Republic would be a subcontractor to Primus for the Renovation. The Subcontract made Owner a third party beneficiary of the Subcontract and expressly allows the Owner to "look directly to Subcontractor for the performance of any and all of the obligations … of Subcontractor." Doc. No. 39-3 at ¶ 18. The Subcontract also contains a "flow-down" clause, which is so named

4

because, to the extent agreed by the parties, the responsibilities of the prime contractor "flow down" to the subcontractor. In part, this provision provides:

> Insofar as the terms of the Prime Contract and/or the obligations and responsibilities which Contractor by the Prime Contract [Primus] has assumed toward Owner [Lineage Logistics] are applicable to the Work, Subcontractor assumes toward Contractor all of the obligations and responsibilities which Contractor by the Prime Contract has assumed toward Owner and shall be bound to Contractor not only by the terms of this Subcontract but also by the terms of the Prime Contract
> ....

*Id*. at ¶ 7.

With respect to insurance requirements, the Subcontract had more limited provisions than the Prime Contract but required that Republic carry several of the same types of insurance policies Lineage required of Primus in the Prime Contract. *See* Doc. No. 39-3 at ¶ 10. Further, the Subcontract contains a specific "waiver of subrogation" provision in the insurance section, which provides, in pertinent part:

> All insurance coverages required to be maintained and furnished hereunder by Subcontractor …. shall for and in respect to any such insurance coverages include a waiver of subrogation by the insurer against Contractor, Owner and Engineer…

*Id*. at ¶ 10.

In its motion to dismiss, Lineage contends that the contractual provisions discussed above establish that the subcontractor Republic waived any right to sue the Owner for the negligence and related contribution claims in the Fourth Party Complaint. In response, Republic argues that the Subcontract should not be interpreted to permit Owner to prospectively immunize itself from liability, including contribution claims, for its own negligence. The motion is fully briefed and ripe for decision.

5

### III. DISCUSSION

The Parties agree that Republic's claims arise under and are governed by North Carolina law. *See* Doc. Nos. 39-1 at 8, 43 at 9. While the interpretation of a written contract may be a question of law that can be resolved in a motion to dismiss where there are no underlying factual issues, *see Homeland Training Ctr., LLC v. Summit Point Auto. Research Ctr.,* 594 F.3d 285, 290 (4th Cir.2010), if there is any factual dispute regarding how to properly interpret the contract, it is not appropriate for consideration under a 12(b)(6) challenge. *See IWTMM, Inc. v. Forest Hills Rest Home*, 156 N.C. App. 556, 563, 577 S.E.2d 175, 179–80 (2003) (reversing a trial court's granting of a motion to dismiss where complaint did not allow for a definite conclusion that plaintiff failed to state a claim upon which relief could be granted); *see also Commscope Credit Union v. Butler & Burke, LLP*, 237 N.C. App. 101, 111, 764 S.E.2d 642, 651 (2014) (when an agreement is ambiguous and the intention of the parties is unclear, interpretation of the contract is for the jury).

Republic and Lineage disagree on the interpretation and interplay between the Prime Contract and the Subcontract and the scope of the waiver of the Owner's liability that "flows" down to Republic as the Subcontractor. Specifically, the Parties dispute 1) whether the limitation of liability urged by Owner is "applicable to the Work" of Republic; 2) are all the terms of the Prime Contract (including the liability waiver) incorporated into the Subcontract regardless of the scope of the "Work"; 3) does the Subcontract's different "waiver of subrogation" provision directed to an "insurer's" waiver of the right of subrogation allow Republic's claims to proceed; and 4) do yet to be decided insurance coverage issues affect the scope of the waiver under the Prime Contract, which limits the liability waiver "to the extent covered by insurance."

Applying the applicable standard of review for Rule 12 motions, the Court need not and should not decide the merits of these varying interpretations of the Prime Contract and the

Subcontract at this time. Plaintiff has stated its claims sufficiently to withstand Defendant's motion to dismiss. Further, the resolution of these issues (and others related to them) may well benefit from the development of the relevant facts in discovery. Accordingly, the Court will deny Lineage's motion to dismiss, without prejudice to Lineage having an opportunity to raise these issues at summary judgment.

## IV.  ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Fourth-Party Defendants LLH MRS Master RE, LLC and Lineage Logistics, LLC's Motion to Dismiss (Doc. No. 39) is **DENIED;** and

2. This case shall continue towards a determination of the merits of all the remaining claims in this action in the absence of a voluntary resolution of the dispute among some or all of the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: December 7, 2021

Kenneth D. Bell
United States District Judge